## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
CASE NO.

ACUSHNET COMPANY,

          Plaintiff,

vs.

ZHANHONGXIA a/k/a ANYBALLS a/k/a
BAOXINTRADE.CO.LTD a/k/a HENGHUI TRADE
a/k/a PENGCHENG9 a/k/a WESTBLUEFLOWERS
a/k/a WLL1988 a/k/a XIANXIAOJIE a/k/a
YONGHENGMALL, DIYBIKE, DSAWGMI,
GUOXINYO, GOLFCLUBCOVERS.FOR-SALE-
TODAY.COM, BETTERGOLFCLUB.COM, and
86GOLFWAREHOUSE.COM, each an Individual,
Partnership, Business Entity, and Unincorporated
Association,

          Defendants.

_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff Acushnet Company ("Plaintiff")[1] hereby sues Defendants, the individuals,

partnerships, business entities, and unincorporated associations identified in the caption, which

are set forth and on Schedule "A" hereto (collectively "Defendants").  Defendants are promoting,

selling, offering for sale and distributing goods bearing counterfeits and confusingly similar

imitations of Plaintiff's trademarks within this district through various Internet based e-

---

[1] Plaintiff is a member of the U.S. Golf Manufacturers Anti-Counterfeiting Working Group,
which is made up of six of the largest golf manufacturers in the world: Acushnet Company,
whose brands are Titleist, FootJoy, Vokey Design and Scotty Cameron; Callaway-Odyssey;
Srixon, Cleveland Golf and XXIO; PING; PXG and TaylorMade Golf. The U.S. Golf
Manufacturers Anti-Counterfeiting Working Group was founded to combat common sources of
counterfeit goods which cause harm to the various members' brands and to the sport of golf in its
entirety, which results in further harm to its members' brands.  Since 2004, the U.S. Golf
Manufacturers Anti-Counterfeiting Working Group has worked with international law
enforcement and government agencies to conduct raids and investigations of counterfeit
operations, as well as raise public awareness of the issue.

commerce stores and fully interactive commercial Internet websites operating under the seller identities or domain names set forth on Schedule "A" hereto (the "Seller IDs and Subject Domain Names").[2] In support of its claims, Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1.      This is an action for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement, pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a), and The All Writs Act, 28 U.S.C. § 1651(a). Accordingly, this Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C., §§ 1331 and 1338.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over Plaintiff's state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

2.      Defendants are subject to personal jurisdiction in this district because they direct business activities toward and conduct business with consumers throughout the United States, including within the State of Florida and this district through at least Internet based e-commerce stores and fully interactive commercial Internet websites accessible in Florida and operating under the Seller IDs and Subject Domain Names.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendants are, upon information and belief, aliens engaged in infringing activities and causing harm within this district by advertising, offering to sell, and/or selling and shipping infringing products into this district.

---

[2] Plaintiff became aware of Defendants and the Seller IDs and Subject Domain Names at issue in this Complaint through the U.S. Golf Manufacturers Anti-Counterfeiting Working Group.

## THE PLAINTIFF

4.      Plaintiff Acushnet Company ("Acushnet") is a corporation organized under the laws of Delaware, having its office and principal place of business at 333 Bridge Street, Fairhaven, Massachusetts 02719.  Plaintiff is, in part, engaged in the business of manufacturing and distributing throughout the world, including within this district, golf equipment and related products under multiple world famous common law and federally registered trademarks including those identified on Schedule "B" hereto.

5.      Plaintiff's trademarked goods are sold through various channels of trade within the State of Florida, including this district. Defendants, through the sale and offer to sell counterfeit and infringing versions of Plaintiff's branded products, are directly, and unfairly, competing with Plaintiff's economic interests in the State of Florida and causing Plaintiff harm within this jurisdiction

6.      Like many other famous trademark owners, Plaintiff suffers ongoing daily and sustained violations of its trademark rights at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce and counterfeit Plaintiff's trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits. The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with Plaintiff's name and trademarks, as well as the destruction of the legitimate market sector in which it operates.

7.      In order to combat the indivisible harm caused by the combined actions of Defendants and others engaging in similar conduct, each year Plaintiff expends significant monetary resources in connection with trademark enforcement efforts, including legal fees, investigative fees, and support mechanisms for law enforcement, such as field training guides

and seminars.  The exponential growth of counterfeiting over the Internet has created an environment that requires companies such as Plaintiff to file a large number of lawsuits, often it later turns out, against the same individuals and groups, in order to protect both consumers and itself from the ill effects of confusion and the erosion of the goodwill connected to Plaintiff's brand.

## THE DEFENDANTS

8.     Defendants are individuals and/or business entities of unknown makeup, each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions, or redistribute products from the same or similar sources in those locations.  Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).  Defendants target their business activities towards consumers throughout the United States, including within this district through the simultaneous operation of, at least, one Internet e-commerce store via, at least, the Internet based marketplace website Wish.com or the fully interactive Internet websites under the Seller IDs and Subject Domain Names.

9.     Upon information and belief, Defendants use aliases in conjunction with the operation of their business including but not limited to those identified by the same Defendant Number on Schedule "A" hereto.

10.     Defendants are the past and present controlling forces behind the sale of products bearing counterfeits and infringements of Plaintiff's trademarks as described herein using at least the Seller IDs and Subject Domain Names.

11.     Upon information and belief, Defendants directly engage in unfair competition with Plaintiff by advertising, offering for sale, and selling goods bearing counterfeits and infringements of one or more of Plaintiff's trademarks to consumers within the United States and

this district through Internet based e-commerce stores or commercial Internet websites using, at least, the Seller IDs and Subject Domain Names and additional domain names or seller identification aliases not yet known to Plaintiff.  Defendants have purposefully directed some portion of their illegal activities towards consumers in the State of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing branded goods into the State.

12.     Defendants have registered, established or purchased, and maintained the Seller IDs and Subject Domain Names.  Upon information and belief, Defendants may have engaged in fraudulent conduct with respect to the registration of the Seller IDs and Subject Domain Names by providing false and/or misleading information to their domain registrars or the Internet based e-commerce platforms where they offer for sale and/or sell, during the registration or maintenance process related to their respective Seller ID and Subject Domain Name. Upon information and belief, Defendants have registered and maintained some of the Seller IDs and Subject Domain Names for sole the purpose of engaging in illegal counterfeiting activities.

13.     Upon information and belief, Defendants will continue to register or acquire new seller identification aliases and domain names for the purpose of selling and offering for sale goods bearing counterfeit and confusingly similar imitations of one or more of Plaintiff's trademarks unless preliminarily and permanently enjoined.

14.     Defendants' use their Internet-based businesses to infringe the intellectual property rights of Plaintiff.

15.     Defendants' business names, i.e., the Seller IDs and Subject Domain Names, associated payment accounts, and any other alias seller identification names and domain names used in connection with the sale of counterfeit and infringing goods bearing one or more of

5

Plaintiff's trademarks are essential components of Defendants' online activities and are one of the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Plaintiff.  Moreover, Defendants are using Plaintiff's famous brand names and trademarks to drive Internet consumer traffic to their e-commerce stores or websites operating under the Seller IDs and Subject Domain Names, thereby increasing the value of the Seller IDs and Subject Domain Names and decreasing the size and value of Plaintiff's legitimate marketplace at Plaintiff's expense.

## COMMON FACTUAL ALLEGATIONS

### Acushnet's Business and Trademark Rights

16.     Acushnet is one of the world's largest manufacturer and supplier of golf equipment, including golf balls marketed under the trademark "Titleist."  Acushnet introduced the first Titleist golf ball in 1935. The company's products are used by many players on the worldwide professional tour.  For many years, products bearing the Acushnet Marks have been used by golf professionals to win hundreds of professional golf tournaments around the world, such as the U.S. Open, the Masters, and the Open Championship, and various others events such as the World Golf Championships.

17.     Plaintiff is the owner and/or exclusive licensee of the trademarks identified on Schedule "B" hereto (the "Acushnet Marks") which are valid and registered on the Principal Register of the United States Patent and Trademark Office.  The Acushnet Marks are used in conjunction with the manufacture and distribution of high quality goods in the categories also identified on Schedule "B".  True and correct copies of the Certificates of Registration for the Acushnet Marks are attached hereto as Composite Exhibit "1."

18.     The Acushnet Marks have been used in interstate commerce to identify and distinguish Plaintiff's high-quality goods for an extended period of time and serve as symbols of Plaintiff's quality, reputation and goodwill.

19.     Further, Plaintiff has expended substantial time, money and other resources developing, advertising and otherwise promoting the Acushnet Marks.

20.     The Acushnet Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

21.     Plaintiff has extensively used, advertised and promoted the Acushnet Marks in the United States in association with the sale of high quality products.

22.     The Acushnet Marks have achieved secondary meaning as identifiers high quality goods as a result of Plaintiff's advertisement, promotion and sale of such goods thereunder.

23.     As a result of Plaintiff's efforts, members of the consuming public readily identify merchandise bearing or sold under the Acushnet Marks, as being high quality merchandise sponsored and approved by Plaintiff.

24.     Plaintiff has carefully monitored and policed the use of the Acushnet Marks and has never assigned or licensed the Acushnet Marks to any Defendant in this matter.

25.     Genuine goods bearing the Acushnet Marks are widely legitimately advertised and promoted by Plaintiff, authorized distributors and unrelated third parties via the Internet. Over the course of the past ten years, visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing has become increasingly important to Plaintiff's overall marketing and consumer education efforts.  Thus, Plaintiff expends significant monetary resources on Internet marketing and consumer education, including search engine optimization ("SEO") strategies.  Those strategies allow Plaintiff and its authorized retailers to fairly and

legitimately educate consumers about the value associated with the Acushnet Marks and the goods sold thereunder.

## COMMON FACTUAL ALLEGATIONS

### Defendants' Infringing Activities

26.     Upon information and belief, at all times relevant hereto, Defendants in this action had full knowledge of Plaintiff's ownership of the Acushnet Marks, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

27.     Defendants are promoting and advertising, distributing, selling and/or offering for sale goods in interstate commerce bearing counterfeit and confusingly similar imitations of the Acushnet Marks (the "Counterfeit Goods") through at least the Internet based e-commerce stores or commercial Internet websites operating under the Seller IDs and Subject Domain Names. Specifically, upon information and belief, Defendants are using identical copies of the Acushnet Marks for different quality goods.  Plaintiff has used the Acushnet Marks extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Plaintiff's merchandise.

28.     Upon information and belief, Defendants' Counterfeit Goods are of a quality substantially and materially different than that of Plaintiff's genuine goods.  Defendants, upon information and belief, are actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine quality goods offered for sale by Plaintiff despite Defendants' knowledge that they are without authority to use the Acushnet Marks.  The net effect of Defendants' actions will cause confusion of consumers at the

time of initial interest, sale, and in the post-sale setting, who will believe Defendants' Counterfeit Goods are genuine goods originating from, associated with, and approved by Plaintiff.

29.     Defendants advertise their Counterfeit Goods for sale to the consuming public via e-commerce stores on Internet marketplace websites using at least the Seller IDs and commercial Internet websites operating under at least the Subject Domain Names.  In so advertising these goods, Defendants improperly and unlawfully use one or more of the Acushnet Marks without Plaintiff's permission.  The misappropriation of Plaintiff's advertising ideas in the form of the Acushnet Marks is the proximate cause of damage to Plaintiff.

30.     As part of their overall infringement and counterfeiting scheme, Defendants are, upon information and belief, all employing and benefitting from substantially similar marketing strategies based, in large measure, upon an illegal use of counterfeits and infringements of the Acushnet Marks.  Specifically, Defendants are using counterfeits and infringements of at least one of the Acushnet Marks in order to make their e-commerce stores and websites selling illegal goods appear more relevant and attractive to consumers online. By their actions, Defendants have created an illegal marketplace operating in parallel to the legitimate marketplace for Plaintiff's genuine goods.  Defendants are causing concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff of its right to fairly compete for space within search engine results and reducing the visibility of Plaintiff's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the Acushnet Marks, and (iii) increasing Plaintiff's overall cost to market its goods and educate consumers about its brands via the Internet.

31.     Upon information and belief, Defendants are concurrently targeting their counterfeiting and infringing activities toward consumers and causing harm within this district

and elsewhere throughout the United States.  As a result, Defendants are defrauding Plaintiff and the consuming public for Defendants' own benefit.

32.     Defendants' use of the Acushnet Marks, including the promotion and advertisement, reproduction, distribution, sale and offering for sale of their Counterfeit Goods, is without Plaintiff's consent or authorization.

33.     Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff's rights for the purpose of trading on Plaintiff's goodwill and reputation.  If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

34.     Defendants' above identified infringing activities are likely to cause confusion, deception and mistake in the minds of consumers, the public, and the trade before, during, and after the time of purchase.  Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Plaintiff's genuine goods and Defendants' Counterfeit Goods, which there is not.

35.     Upon information and belief, Defendants' payment and financial accounts are being used by Defendants to accept, receive, and deposit profits from Defendants' trademark counterfeiting and infringing and unfairly competitive activities connected to their Seller IDs and Subject Domain Names and any other alias seller identification names or domain names being used and/or controlled by them.

36.     Further, upon information and belief, Defendants are likely to transfer or secret their assets to avoid payment of any monetary judgment awarded to Plaintiff.

37.     Plaintiff has no adequate remedy at law.

38.     Plaintiff is suffering irreparable and indivisible injury and has suffered substantial damages as a result of Defendants' unauthorized and wrongful use of the Acushnet Marks.  If Defendants' counterfeiting and infringing, and unfairly competitive activities, are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

39.     The harm and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

## COUNT I - TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

40.     Plaintiff hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 39 above.

41.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of the Acushnet Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale, and/or sale of the Counterfeit Goods.

42.     Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods using counterfeits and/or infringements of one or more of the Acushnet Marks. Defendants are continuously infringing and inducing others to infringe the Acushnet Marks by using one or more of them to advertise, promote, offer to sell and/or sell counterfeit and infringing branded goods.

43.     Defendants' concurrent counterfeiting and infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

44.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable damage to Plaintiff and are unjustly enriching Defendants with profits at Plaintiff's expense.

45.     Defendants' above-described illegal actions constitute counterfeiting and infringement of the Acushnet Marks in violation of Plaintiff's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

46.     Plaintiff has suffered and will continue to suffer irreparable injury and damages due to Defendants' above described activities if Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their illegal activities.

## COUNT II - FALSE DESIGNATION OF ORIGIN
## PURSUANT TO § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))

47.     Plaintiff hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 39 above.

48.     Defendants' Counterfeit Goods bearing, offered for sale, and sold under copies of at least one of the Acushnet Marks have been widely advertised and offered for sale throughout the United States via the Internet.

49.     Defendants' Counterfeit Goods bearing, offered for sale, and sold under copies of at least one of the Acushnet Marks are virtually identical in appearance to Plaintiff's genuine goods.  However, Defendants' Counterfeit Goods are different in quality.  Accordingly,

Defendants' activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of their Counterfeit Goods.

50.     Defendants, upon information and belief, have used in connection with their advertisement, offer for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress which tend to falsely describe or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiff's detriment.

51.     Defendants have authorized infringing uses of at least one the Acushnet Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods. Defendants have misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

52.     Additionally, Defendants are using counterfeits and infringements of the Acushnet Marks in order to unfairly compete with Plaintiff and others for space within search engine organic results, thereby jointly depriving Plaintiff of a valuable marketing and educational tool which would otherwise be available to Plaintiff and reducing the visibility of Plaintiff's genuine goods on the World Wide Web.

53.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

54.     Plaintiff has no adequate remedy at law, and has sustained indivisible injury and damage caused by Defendants' concurrent conduct. Absent an entry of an injunction by this Court, Defendants will continue to wrongfully reap profits and Plaintiff will continue to suffer irreparable injury to its goodwill and business reputation as well as monetary damages.

## COUNT III – COMMON LAW UNFAIR COMPETITION

55.     Plaintiff hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 39 above.

56.     This is an action against Defendants based on their promotion, advertisement, distribution, sale and/or offering for sale of goods bearing marks which are virtually identical, both visually and phonetically, to the Acushnet Marks in violation of Florida's common law of unfair competition.

57.     Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing counterfeits and infringements of one or more of the Acushnet Marks. Defendants are also using counterfeits and infringements of one or more of the Acushnet Marks to unfairly compete with Plaintiff and others for (i) space in search engine results across an array of search terms and (ii) visibility on the World Wide Web.

58.     Defendants' infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' products by their use of the Acushnet Marks.

59.     Plaintiff has no adequate remedy at law and is suffering irreparable injury and damages as a result of Defendants' actions.

## COUNT IV - COMMON LAW TRADEMARK INFRINGEMENT

60.     Plaintiff hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 39 above.

61.     This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods

14

bearing one or more of the Acushnet Marks.  Plaintiff is the owner of all common law rights in and to the Acushnet Marks.

62.     Specifically, Defendants, upon information and belief, promoting and otherwise advertising, distributing, offering for sale, and selling goods bearing infringements of at least one of the Acushnet Marks.

63.     Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods bearing the Acushnet Marks.

64.     Plaintiff has no adequate remedy at law and is suffering damages and irreparable injury as a result of Defendants' actions.

## PRAYER FOR RELIEF

65.     WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

a.     Entry of temporary, preliminary and permanent injunctions pursuant to 15 U.S.C. § 1116 and Federal Rule of Civil Procedure 65, enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting the Acushnet Marks; from using the Acushnet Marks, or any mark or trade dress similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name, trademark or trade dress that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff; from falsely representing themselves as being connected with Plaintiff, through

sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants are in any way endorsed by, approved by, and/or associated with Plaintiff; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the Acushnet Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiff, or in any way endorsed by Plaintiff and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Plaintiff's name or trademarks; and from otherwise unfairly competing with Plaintiff.

b.      Entry of an order pursuant to 28 U.S.C §1651(a), The All Writs Act that, upon Plaintiff's request, the top level domain (TLD) Registry for each of the Subject Domain Names or their administrators, including backend registry operators or administrators, place the Subject Domain Names on Registry Hold status for the remainder of the registration period for any such domain name, thus removing them from the TLD zone files which link the Subject Domain Names to the IP addresses where the associated websites are hosted.

c.      Entry of an order pursuant to 28 U.S.C §1651(a), The All Writs Act, canceling for the life of the current registration or, at Plaintiff's election, transferring the Subject Domain Names and any other domain names used by Defendants to engage in their counterfeiting of the Acushnet Marks at issue to Plaintiff's control so they may no longer be used for illegal purposes, and requiring the Seller IDs, and any other alias seller identification names being used and/or controlled by Defendants to engage in the business of marketing, offering to

16

sell and/or selling goods bearing counterfeits and infringements of the Acushnet Marks be disabled by the applicable governing Internet marketplace website.

   d. Entry of an order that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators that are provided with notice of the injunction, including but not limited to ContextLogic, Inc., which operates the Wish.com platform, identify any e-mail address known to be associated with Defendants' respective Seller ID, and cease facilitating access to any or all e-commerce stores through which Defendants engage in the promotion, offering for sale and/or sale of goods bearing counterfeits and/or infringements of the Acushnet Marks.

   e. Entry of an order requiring Defendants to account to and pay Plaintiff for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Plaintiff be trebled, as provided for under 15 U.S.C. §1117, or, at Plaintiff's election with respect to Count I, that Plaintiff be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

   f. Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Plaintiff's costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

   g. Entry of an Order that, upon Plaintiff's request, any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to PayPal, Inc. and ContextLogic, Inc., which operates the Wish.com platform, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in

connection with the Seller IDs and Subject Domain Names, or other alias seller identification names, e-commerce store names, or domain names used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), to be surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein.

        h.     Entry of an award of pre-judgment interest on the judgment amount.

        i.     Entry of an order for any further relief as the Court may deem just and proper.

DATED: July 17, 2018.            Respectfully submitted,

                          STEPHEN M. GAFFIGAN, P.A.

                          By:  _s:/**Stephen M. Gaffigan**/_____
Stephen M. Gaffigan (Fla. Bar No. 025844)
Virgilio Gigante (Fla. Bar No. 082635)
T. Raquel Rodriguez-Albizu (Fla. Bar. No. 103372)
401 East Las Olas Blvd., # 130-453
Ft. Lauderdale, Florida 33301
Telephone: (954) 767-4819
Facsimile: (954) 767-4821
E-mail: Stephen@smgpa.net
E-mail: Leo@smgpa.net
E-mail: Raquel@smgpa.net

Attorneys for Plaintiff Acushnet Company

**SCHEDULE "A"**
**DEFENDANTS BY NUMBER, SELLER ID, AND SUBJECT DOMAIN NAME**

| Defendant Number | Defendant / Seller ID / Subject Domain Name |
|---|---|
| 1 | zhanhongxia |
| 1 | anyballs |
| 1 | Baoxintrade.Co.Ltd |
| 1 | Henghui trade |
| 1 | PENGCHENG9 |
| 1 | westBlueflowers |
| 1 | wll1988 |
| 1 | xianxiaojie |
| 1 | yonghengmall |
| 2 | diybike |
| 3 | dsawgmi |
| 4 | guoxinyo |
| 5 | bettergolfclub.com |
| 6 | golfclubcovers.for-sale-today.com |
| 7 | 86golfwarehouse.com |

## SCHEDULE "B"
## ACUSHNET COMPANY'S FEDERALLY REGISTERED TRADEMARKS

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| TITLEIST | 934,406 | May 23, 1972 | IC 028. golf equipment comprising golf balls, golf clubs, golf bags, golf gloves and golf headcovers. |
| *Titleist* | 1,155,766 | May 26, 1981 | IC 028. golf equipment, namely, golf balls, golf clubs and golf bags. |
| NEWPORT | 1,966,493 | April 9, 1996 | IC 028. golf putters. |
|  | 2,231,199 | March 9, 1999 | IC 028. golf clubs. |
| VOKEY DESIGN | 2,235,383 | March 23, 1999 | IC 28. golf clubs. |
| SCOTTY CAMERON | 2,525,024 | January 1, 2002 | IC 028. golf clubs and accessories thereof. |
|  | 2,527,400 | January 8, 2002 | IC 028. golf clubs and accessories thereof. |
| STUDIO DESIGN | 2,620,431 | September 17, 2002 | IC 028. Golf clubs and accessories, namely golf tees, golf gloves, golf bags, golf putters, golf drivers, golf woods, golf irons, golf green repair tools, golf club covers, and golf bag covers. |
|  | 2,620,432 | September 17, 2002 | IC 028. Golf clubs and accessories, namely golf tees, golf gloves, golf bags, golf putters, golf drivers, golf woods, golf irons, golf green repair tools, golf club covers, and golf bag covers. |
| FOR TOUR USE ONLY | 3,136,851 | August 29, 2006 | IC 28. golf equipment, namely, golf putters and golf putter covers. |
|  | 3,376,961 | February 5, 2008 | IC 024. golf towels. IC 025. clothing, namely, jackets, shirts, hats and visors. IC 028. golf equipment, namely, golf putters, golf club head covers, golf club grips and divot tools. |
| AP2 | 3,831,911 | August 10, 2010 | IC 028. golf clubs. |

| | 3,831,914 | August 10, 2010 | IC 028.golf clubs. |
|---|---|---|---|
| | 3,831,915 | August 10, 2010 | IC 028. golf clubs. |